DOCKET NUMBER 22-12493-CC

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

GEORGE HARRIS,

Appellant/Plaintiff,

v.

JON HIXON and JOSEPH BULTMAN,

Appellees/Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

**APPELLEE JOSEPH BULTMAN'S UNOPPOSED MOTION TO
CORRECT BRIEF OF APPELLEE**

James B. Ellington
Emily A. Doumar
Hull Barrett, PC
P.O. Box 1564
Augusta, GA 30903
(706) 722-4481
jellington@hullbarrett.com
edoumar@hullbarrett.com

ATTORNEYS FOR APPELLEE/DEFENDANT JOSEPH BULTMAN

**Certificate of Interested Persons and
Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the undersigned counsel for the appellee Joseph Bultman certifies that the following is a full and complete list of all trial judges, all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock and other identifiable legal entities related to a party:

1. ASSOCIATION COUNTY COMMISIONERS OF GEORGIA – INTERLOCAL RISK MANAGEMENT AGENCY (ACCG-IRMA) – Risk sharing agreement among Georgia county governments which is providing coverage to Defendant/Appellee Joseph Bultman;

2. BULTMAN, JOSEPH – Defendant/Appellee;

3. CRAIG T. JONES, P.C. – Law firm representing Plaintiff/Appellant;

4. DOUMAR, EMILY A. – Attorney for Defendant/Appellee Joseph Bultman;

5. ELLINGTON, JAMES B. – Attorney for Defendant/Appellee Joseph Bultman;

6. FRAILS, RANDOLPH – Attorney for Defendant/Appellee Jon Hixon;

7.    HALL, THE HONORABLE J. RANDAL – United States District Judge for the Southern District of Georgia;

8.    HARRIS, GEORGE ANGEL – Plaintiff/Appellant;

9.    HAYNES, TAMEKA – Attorney for Defendant/Appellee Jon Hixon;

10.   HIXON, JON – Defendant/Appellee;

11.   JONES, CRAIG T. – Attorney for Plaintiff/Appellant;

12.   ROUNDTREE, SHERIFF RICHARD – Sheriff of Richmond County, Georgia and employer of Defendant/Appellee Jon Hixon; and

13.   WHITTLE, SHERIFF CLAY N. – Sheriff of Columbia County, Georgia and employer of Defendant/Appellee Joseph Bultman.

No publicly traded company or corporation has an interest in the outcome of this case or its appeal.

This 8 day of November, 2022.

/s/ James B. Ellington
James B. Ellington
Georgia Bar No. 243858
Attorney for Defendant/Appellee
Joseph Bultman

OF COUNSEL:
HULL BARRETT, P.C.
Post Office Box 1564
Augusta, Georgia 30903-1564
(706) 722-4481 (telephone)
(706) 722-9779 (facsimile)
jellington@hullbarrett.com

NOW COMES the appellee Joseph Bultman, being unopposed by the appellant, pursuant to 11th Cir. R. 27-1(c)(3), and moves this Court to permit him to correct errors contained in certain citations to the record in his Brief of Appellee.

Below is a list of corrections made in the body of the Brief:

| PG# | L.# | ORIGINAL | CORRECTION |
|-----|-----|----------|------------|
| p. 3 | L. 1 | R 18-1 | R 18-2 |
| p. 3 | L. 2 | R 18-1 | R 18-2 |
| p. 3 | L. 4 | R 18-1 | R 18-2 |
| p. 3 | L. 9 | R 18-1 | R 18-2 |
| p. 3 | L. 12 | R 18-1 | R 18-2 |
| p. 3 | L. 17 | R 18-1 | R 18-2 |
| p. 4 | L. 1 | R 18-1 | R 18-3 |
| p. 4 | L. 2 | R 18-1 | R 18-2 |
| p. 4 | L. 3 | R 18-1 | R 18-4 |
| p. 4 | L.5 | R 18-1 | R 18-4 |
| p. 4 | L. 8 | R 18-1 | R 18-3 |
| p. 4 | L. 10 | R 18-1 | R 18-2 |
| p. 4 | L. 11 | R 18-1 | R 18-3 |
| p. 4 | L. 13 | R 18-1 | R 18-3 |
| p. 4 | L. 18 | R 18-1 | R 18-2 |

| | | |
|---|---|---|
| p. 5   L. 2 | R 18-1 | R 18-2 |
| p. 5   L. 6 | R 18-1 | R 18-2 |
| p. 5   L. 6 | R 18-1 | R 18-3 |
| p. 5   L. 13 | R 18-1 | R 18-3 |
| p. 5   L. 14 | R 18-1 | R 18-5 |
| p. 5   L. 16 | R 18-1 | R 18-3 |
| p. 5   L. 16 | R 18-1 | R 18-5 |
| p. 6   L. 1 | R 18-1 | R 18-6 |
| p. 6   L. 4 | R 18-1 | R 18-6 |
| p. 6   L. 7 | R 18-1 | R 18-7 |
| p. 6   L. 12 | R 18-1 | R 18-7 |
| p. 11  L. 14 | R 18-1 | R 18-6 |
| p. 13  L. 9 | R 18-1 | R 18-2 |
| p. 19  L. 20 | R 18-1 | R 18-3 |
| p. 20  L. 5 | R 18-1 | R 18-2 |
| p. 20  L.10 | R 18-1 | R 18-2 |
| p. 20  L.15 | R 18-1 | R 18-2 |
| p. 21  L. 7 | R 18-1 | R 18-2 |
| p. 24  L. 7 | _____ | R 18-2 |
| p. 24  L. 8 | _____ | R 18-2 |

| p. 32  L.17 | R 18-1 | R 18-3 |
| p. 32  L. 18 | R 18-1 | R 18-5 |

A copy of the proposed Corrected Brief of Appellee Joseph Bultman is attached as an exhibit to this Motion.

The undersigned has consulted with counsel for the appellant, who does not oppose this Motion.

This 8 day of November, 2022.

/s/ James B. Ellington
James B. Ellington
Georgia Bar No. 243858
Emily A. Doumar
Georgia Bar No. 279018
Attorneys for Defendant/Appellee
Joseph Bultman

Consented to:

/s/ Craig T. Jones
Craig T. Jones
Georgia Bar No. 399476
Attorney for Plaintiff/Appellant
George Harris
Craig T. Jones, P.C.
Post Office Box 129
Washington, Georgia 30673

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, the undersigned counsel for Defendant/Appellee Joseph Bulman hereby certifies that this Motion complies with the type-volume limitation of Rule 27(d)(2)(A) in that it contains 386 words, excluding the parts of the Motion exempted by Rule 32(f) and 11th Cir. Rule 32-4.

This Motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this Motion has been prepared in a proportionally spaced typeface using Microsoft Word Version 2203 in 14-point Times New Roman font.

  /s/ James B. Ellington   
James B. Ellington
Georgia Bar No. 243858
Attorney for Defendant/Appellee
Joseph Bulman

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day electronically filed the foregoing Appellee Joseph Bultman's Unopposed Motion to Correct Brief of Appellee using the CM/ECF system, which has effected service upon the following counsel of record pursuant to Fed. R. App. P 25 (c) (2) and 11th Cir. Rule 25-3 (a):

Craig T. Jones
Craig T. Jones, P.C.
P.O. Box 129
Suite 105
Washington, GA 30673
craigthomasjones@outlook.com

Randolph Frails
Tameka Haynes
Frails & Wilson, LLC
211 Pleasant Home Road, Suite A1
Augusta, GA 30907
randyfrails@frailswilsonlaw.com
thaynes@frailswilsonlaw.com

This 8 day of November, 2022.

                        /s/ James B. Ellington
                        James B. Ellington

# EXHIBIT A

DOCKET NUMBER 22-12493-CC

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

GEORGE HARRIS,

Appellant/Plaintiff,

v.

JON HIXON and JOSEPH BULTMAN,

Appellees/Defendants.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

---

**CORRECTED**
**BRIEF OF APPELLEE JOSEPH BULTMAN**

---

James B. Ellington
Emily A. Doumar
Hull Barrett, PC
P.O. Box 1564
Augusta, GA 30903
(706) 722-4481
jellington@hullbarrett.com
edoumar@hullbarrett.com

ATTORNEYS FOR APPELLEE/DEFENDANT JOSEPH BULTMAN

**Certificate of Interested Persons and
Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the undersigned counsel for the appellee Joseph Bultman certifies that the following is a full and complete list of all trial judges, all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock and other identifiable legal entities related to a party:

1. ASSOCIATION COUNTY COMMISIONERS OF GEORGIA – INTERLOCAL RISK MANAGEMENT AGENCY (ACCG-IRMA) – Risk sharing agreement among Georgia county governments which is providing coverage to Defendant/Appellee Joseph Bultman;

2. BULTMAN, JOSEPH – Defendant/Appellee;

3. CRAIG T. JONES, P.C. – Law firm representing Plaintiff/Appellant;

4. DOUMAR, EMILY A. – Attorney for Defendant/Appellee Joseph Bultman;

5. ELLINGTON, JAMES B. – Attorney for Defendant/Appellee Joseph Bultman;

6. FRAILS, RANDOLPH – Attorney for Defendant/Appellee Jon Hixon;

7.  HALL, THE HONORABLE J. RANDAL – United States District Judge for the Southern District of Georgia;

8.  HARRIS, GEORGE ANGEL – Plaintiff/Appellant;

9.  HAYNES, TAMEKA – Attorney for Defendant/Appellee Jon Hixon;

10. HIXON, JON – Defendant/Appellee;

11. JONES, CRAIG T. – Attorney for Plaintiff/Appellant;

12. ROUNDTREE, SHERIFF RICHARD – Sheriff of Richmond County, Georgia and employer of Defendant/Appellee Jon Hixon; and

13. WHITTLE, SHERIFF CLAY N. – Sheriff of Columbia County, Georgia and employer of Defendant/Appellee Joseph Bultman.

No publicly traded company or corporation has an interest in the outcome of this case or its appeal.

This 8 day of November, 2022.

/s/ James B. Ellington
James B. Ellington
Georgia Bar No. 243858
Attorney for Defendant/Appellee
Joseph Bultman

OF COUNSEL:
HULL BARRETT, P.C.
Post Office Box 1564
Augusta, Georgia 30903-1564
(706) 722-4481 (telephone)
(706) 722-9779 (facsimile)
jellington@hullbarrett.com

# STATEMENT REGARDING ORAL ARGUMENT

The appellee Joseph Bultman ("Investigator Bultman") requests oral argument in this case. Federal Rule of Appellate Procedure 34(a)(2) provides that oral argument should occur, unless the panel unanimously agrees otherwise. <u>See also</u>, 11th Cir. Rule 34-3(b). The plaintiff has also requested oral argument.

Investigator Bulman requests oral argument because this appeal involves two separate issues, the entitlement of two law enforcement officers to qualified immunity under the established law of this Court and the District Court's exclusion of the plaintiff's expert under <u>Daubert</u> standards of admissibility. Oral argument will aid the decisional process in this appeal by providing the Court with an opportunity to question counsel for all parties about the detailed portions of the record as they pertain to these two interrelated issues.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS…………………………………C-1

STATEMENT REGARDING ORAL ARGUMENT……………………………i

TABLE OF CONTENTS……………………………………………………..ii

TABLE OF CITATIONS……………………………………………………..v

STATEMENT OF JURISDICTION…………………………………………….x

STATEMENT OF THE ISSUES……………………………………………..1

STATEMENT OF THE CASE………………………………………………1

     A.    PROCEEDINGS BELOW…………………………………………....1

     B.    STATEMENT OF FACTS…………………………………………...2

     C.    STANDARD OF REVIEW………………………………………..7

SUMMARY OF THE ARGUMENT………………………………………...7

ARGUMENT AND CITATION OF AUTHORITY……………………………...10

     I.    THE DISTRICT COURT CORRECTLY DETERMINED THAT INVESTIGATOR BULTMAN WAS ENTITLED TO QUALIFIED IMMUNITY, SINCE HIS IDENTIFICATION OF THE PLAINTAIFF AS A CRIMINAL SUSPECT WAS A REASONABLE MISTAKE IN THE LITIGIMATE PERFORMANCE OF HIS LAW ENFORCEMENT DUTIES AND SINCE HE HAD AT LEAST

ARGUABLE PROBABLE CAUSE TO BELIEVE THAT THE

PLAINTIFF WAS THE SUSPECT……………………………10

A.      Federal Law Claim Against Investigator Bultman………...…11

B.      Investigator Bultman is Entitled To Qualified Immunity With

        Respect To the Plaintiff's § 1983 Claim Against Him……….12

        1.      The Parameters of Qualified Immunity………………..12

        2.      A Reasonable Misidentification in the Legitimate

                Performance of an Officer's Duties Is Protected by

                Qualified Immunity……………………………………15

        3.      Under the Totality of the Circumstances, Investigator

                Bultman's Identification of the Plaintiff as the Red Box

                Suspect Was Reasonable, and Arguable Probable Cause

                Existed for the Plaintiff's Arrest Warrant……………..19

        4.      Investigator Bultman Conducted a Proper

                Investigation………………………………………...25

C.      This Court's Recent Decision in Luke v. Gulley Is Inapposite

        to the Claims in This Case…………………………………30

II.     THE DISTRICT COURT CORRECTLY GRANTED

        INVESTIGATOR BULTMAN'S DAUBERT MOTION BECAUSE

        THE TESTIMONY OF THE PLAINTIFF'S EXPERT DOES NOT

SATISFY FEDERAL RULE OF EVIDENCE 702 AND DAUBERT STANDARDS OF ADMISSIBILITY………………………………35

A.      Rule 702 and the Daubert Standard…………………………..37

B.      The District Court Did Not Abuse Its Discretion When It Excluded Williams' Testimony………………………………39

      1.      Williams' Specialized Knowledge Will Not Help the Trier of Fact To Understand the Evidence or To Determine a Fact at Issue…………………………….........................39

      2.      Williams' Proposed Testimony Is Not Based on Sufficient Facts or Data, His Opinion Is Not the Product of Reliable Principles or Methods, and He Did Not Apply Any Such Principles or Methods Reliably………………………...43

      3.      Williams' Proposed Testimony Will Have a Prejudicial Effect Substantially Outweighing the Proposed Testimony's Probative Value…………………………47

CONCLUSION………………………………………………………………...49

# TABLE OF CITATIONS

**A.  UNITED STATES SUPREME COURT CASES**

*Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)……..……...37

General Elec. Co. v. Joiner, 522 U.S. 136 (1997)…………………………38

Harlow v. Fitzgerald, 457 U.S. 800 (1982)………………………………..12

Hunter v. Bryant, 502 U.S. 224 (1991)…………………………………….25

*Khumo Tire Co. v. Carmichael, 526 U.S. 137 (1999)…………...……37, 38

Nieves v. Bartlett, 139 S. Ct. 1715 (2019)………………………………….23

Wheeler v. Nesbitt, 65 U.S. 544 (1861)…………………………………….23

**B.  CIRCUIT COURT CASES**

Alcocer v. Mills, 906 F. 3d 944 (11th Cir. 2018)…………………………...11

Barts v. Joyner, 865 F. 2d 1187 (11th Cir. 1989)………………………..22, 34

Boyette v. Adams, 2022 U.S. App. LEXIS 28473 (11th Cir. Oct. 13,
2022)…………………………...……………………………………14

Brown v. City of Huntsville, 608 F. 3d 724 (11th Cir. 2010)………………14

Carr v. Tatangelo, 338 F. 3d 1259 (11th Cir. 2003)………………………...12

Chapman v. City of Atlanta, 192 F. App'x 922 (11th Cir. 2006)…………..17

Cook v. Sheriff of Monroe County, 402 F. 3d 1092 (11th Cir. 2005)….37, 38

Cozzi v. City of Birmingham, 892 F. 3d 1288 (11th Cir. 2018)……28, 29, 30

Deegan v. Homestead Police Dep't, 750 F. App'x 796 (11th Cir. 2018)…………………………………………………………….22, 34

Dotson v. United States, 30 F. 4th 1259 (11th Cir. 2022)……………………7

Eubanks v. Gerwen, 40 F. 3d 1157 (11th Cir. 1994)………………………..22

Green v. City of Lawrenceville, 745 F. App'x 881 (11th Cir. 2018)…...27, 28

Holloman v. Harland, 370 F. 3d 1252 (11th Cir. 2004)……………………13

Kilpatrick v. Breg, Inc., 613 F. 3d 1329 (11th Cir. 2010)………………..7, 36

Kingsland v. City of Miami, 382 F. 3d 1220 (11th Cir. 2004), abrogated in part on other grounds by, Williams v. Aguirre, 965 F. 3d 1147 (11th Cir. 2020)…………………………………………………………………25

*Knight v. Miami-Dade County, 856 F. 3d 795 (11th Cir. 2017)…..37, 42, 43

Laskar v. Hurd, 972 F. 3d 1278 (11th Cir. 2020)………………………14, 21

Luke v. Gulley, 50 F. 4th 90, 2022 U.S. App. LEXIS 27631 (11th Cir. Oct. 3, 2022)…………………………………………..22, 23, 30-34

Mathews v. Wetherbee, 839 F. App'x 395 (11th Cir. 2020)……………..…11

Paez v. Mulvey, 915 F. 3d 1276 (11th Cir. 2019)…………………………..14

Rankin v. Evans, 133 F. 3d 1425 (11th Cir. 1998)…………………………25

Rich v. Dollar, 841 F. 2d 1558 (11th Cir. 1988)……………………………13

Rink v. Cheminova, Inc., 400 F. 3d 1286 (11th Cir. 2005)…………………..7

*Rodriguez v. Farrell, 280 F. 3d 1341 (11th Cir. 2022)………………...15, 16

*Rushing v. Parker, 599 F. 3d 1263 (11th Cir. 2010)……....12, 13, 14, 15, 25

Smith v. Mitchell, 856 F. App'x 248 (11th Cir. 2021)…………...14, 21, 22

Spinnenweber v. Williams, 825 F. App'x 730 (11th Cir. 2020)………..11, 12

Strolis v. Heise, 834 F. App'x 523 (11th Cir. 2020)………………………..13

Tanberg v. Sholtis, 401 F. 3d 1151 (10th Cir. 2005)………………………..41

Thayer v. Randy Marion Chevrolet Buick Cadillac, LLC, 30 F. 4th 1290

    (11th Cir. 2022)………………………………………………………..7

United States v. Barton, 909 F. 3d 1323 (11th Cir. 2018)………………38, 39

United States v. Frazier, 387 F. 3d 1244 (11th Cir. 2004)…………………38

*Washington v. Rivera, 939 F. 3d 1239 (11th Cir. 2019)…….………….....27

*Water Bagel Co. v. Bersin Bagel Grp., LLC, 817 F. 3d 719 (11th Cir.

    2016)…………………………………………………………………...36

Williams v. Aguirre, 965 F. 3d 1147 (11th Cir. 2020)…..11,12, 23, 25, 33-34

*Williams v. City of Montgomery, 839 F. App'x 356 (11th Cir. 2020)..16, 21

Wood v. Kessler, 323 F. 3d 872 (11th Cir. 2003)…………………………..14

Young v. New Process Steel, LP, 419 F. 3d 1201 (11th Cir. 2005)………...46

**C.    DISTRICT COURT CASES**

Cherry v. Barnard, 2012 U.S. Dist. LEXIS 30693 (M.D. Fla. Mar. 8,

    2012)………………………………………………………………...19

Hooks v. Brewer, 2018 U.S. Dist. LEXIS 231837 (S.D. Ga. Jan. 29,

2018), aff'd in part and rev'd in part, 818 F. App'x 923 (11th Cir.

2020)…………………………………………………...28, 29, 30

Johnson v. Darnell, 2018 U.S. Dist. LEXIS 130747 (N.D. Fla. July 13,

2018), adopted by, 2018 U.S. Dist. LEXIS 129753 (N.D. Fla.

Aug. 2, 2018), aff'd, 781 F. App'x 961 (11th Cir.

2019)…………………………………………………………...18

Robinson v. City of Atlanta, 2007 U.S. Dist. LEXIS 46088 (N.D. Ga. June

26, 2007)…………..………………………………………….........19

Rogers v. City of College Park, 2019 U.S. Dist. LEXIS 149072 (N.D. Ga.

Sept. 3, 2019)………………………………………...……..17, 18

Towns v. Beseler, 2016 U.S. Dist. LEXIS 141158 (M.D. Fla. Oct. 12,

2016)………………………………………………………18, 19

United States v. White, 2007 U.S. Dist. LEXIS 43682 (E.D. Va. June

15, 2007), aff'd, 2009 U.S. App. LEXIS 1717 (4th Cir. Jan 29,

2009)………………………………………………………48, 49

**D.**    **FEDERAL STATUTES**

28 U.S.C. § 1291…………………………………………………..x

42 U.S.C. § 1983…………………………………………………1, 10

**E.    FEDERAL RULES**

Fed. R. App. P 34(a)(2)…………………………………………………………i

Fed. R. Evid. 403………………………………………………………………...49

Fed. R. Evid. 702…………………………………………………………….37, 41

11th Cir. Rule 34-3(b)…………………………………………………..i

**F.    TREATISES**

Restatement of Torts § 653 (1938)……………………………………………23

Restatement of Torts § 668 (1938)……………………………………………24

_____

*Authorities chiefly relied upon are marked with an asterisk.

## <u>STATEMENT OF JURISDICTION</u>

This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, as the plaintiff/appellant has appealed a final order of the District Court granting summary judgment to Investigator Bultman.

## STATEMENT OF THE ISSUES

1.     Whether the District Court correctly determined that Investigator Bultman was entitled to qualified immunity, since (a) his identification of the plaintiff as the criminal suspect was a reasonable mistake in the legitimate performance of his law enforcement duties and (b) he had at least arguable probable cause to believe that the plaintiff was the suspect.

2.     Whether the District Court correctly determined that the testimony of the plaintiff's expert witness should be excluded since (a) his testimony will not assist the trier of fact, (b) his testimony is not based on sufficient facts or data, (c) his testimony is not the product of reliable principles and methods, (d) he did not apply any such principles and methods reliably, and (e) his testimony will have a prejudicial effect substantially outweighing its probative value.

## STATEMENT OF THE CASE

### A.     PROCEEDINGS BELOW

On October 9, 2020, the plaintiff filed suit against Investigator Joseph Bultman of the Columbia County Sheriff's Office and Investigator Jon Hixon of the Richmond County Sheriff's Office, in their individual capacities, pursuant to 42 U.S.C. § 1983.     The plaintiff alleged violations of the Fourth Amendment's

prohibition against unreasonable seizures. (R 1.)[1] The plaintiff's Complaint also contained state law claims against the investigators.[2] Investigators Bultman and Hixon timely answered. (R 6 and 7.)

After the conclusion of discovery, both investigators filed Motions for Summary Judgment as to the plaintiff's claims. (R 17 and 22.) Investigator Bultman also filed a Motion to Exclude Opinion Testimony of the plaintiff's expert witness. (R 21.) Following detailed briefing by the parties, the District Court granted both investigators' Motions for Summary Judgment and Investigator Bultman's Motion to Exclude in an Order entered on July 19, 2022. (R 50.) This appeal followed.

## B. STATEMENT OF FACTS

This case arises from the plaintiff's 2019 arrest in Richmond County, Georgia on two counts of financial transaction card fraud. (R 18 - 1, Exh. "A" – Superior Court of Richmond County, State of Georgia v. George Angel Harris, 2019-RCCR-960 / Accusation.) The plaintiff's arrest emanated from a criminal incident in which an unknown suspect entered a vehicle being driven by Jacob Newman that had been parked at the Evans Fitness Express location in Columbia County, Georgia. (R 18 –

---

[1] The reference format used in this Brief cites to the record by the letter "R" followed by the District Court's ECF document number and then to the page number of the document, if appropriate (e.g., R 1 - p. 1 references District Court document 1 at page 1).

[2] In his Brief in this appeal, the plaintiff has abandoned his state law claims. (Brief of Appellant at p. 29 n. 4.)

2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 3.) The suspect had taken several items of value, including Mr. Newman's debit card. (R 18 – 2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 3.) The case was assigned to Columbia County Sheriff's Office Investigator Joseph T. Bultman. (R 18-2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 3.)

During the course of his investigation, Investigator Bultman contacted Mr. Newman's financial institution and obtained transaction details of when the debit card was used. These transaction details showed that the card had been used at two Redbox DVD kiosks and at two Circle K gas stations. (R 18 – 2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 4 and Decl. Exh. 1.) Investigator Bultman followed up by going to the gas stations and the Redbox locations and viewing security camera footage. (R 18 – 2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 4 and Decl. Exh. 1.) While the security camera footage at the gas pumps did not identify a suspect using the debit card, the security camera footage at the Redbox locations revealed a light-skinned male with dreadlocks that appear to be tied on the top of his head using the card at times that matched when the financial institution transaction sheet showed that the card had been used. (R 18 – 2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 4.)

Investigator Bultman had previously encountered the plaintiff. One encounter occurred in 2015 when Investigator Bultman arrested the plaintiff for obstructing a

law enforcement officer during a fight at a McDonald's restaurant. (R 18 – 3, Exh. "C" – Depo. of Joseph T. Bultman at pp. 15-16; R 18 – 2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 5; R 18 – 4, Exh. "D" – Superior Court of Columbia County, State of Georgia v. George Angel Harris, 2015CR0988.) The plaintiff pled guilty to the charge. (R 18 – 4, Exh. "D" – Superior Court of Columbia County, State of Georgia v. George Angel Harris, 2015CR0988.) A second encounter occurred between 2015 and 2019 during the course of a domestic dispute between the plaintiff and his girlfriend. (R 18 – 3, Exh. "C" – Depo. of Joseph T. Bultman at pp. 17-18.) During these two encounters, Investigator Bultman spent between an hour to an hour-and-a-half with the plaintiff. (R 18 – 2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 5; R 18 – 3, Exh. "C" – Depo. of Joseph T. Bultman at p. 18.)

Upon reviewing the security videos from the Redbox locations, Investigator Bultman believed that the plaintiff was the Redbox suspect. (R 18 – 3, Exh. "C" – Depo. of Joseph T. Bultman at p. 23.) Investigator Bultman reviewed mugshots of the plaintiff from previous bookings at the Columbia County Detention Center and a Facebook photograph of the plaintiff that was available online. He then compared those photographs of the plaintiff with the security video of the Redbox suspect. (R 18 – 2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 6.) Based upon his previous encounters with the plaintiff, the mugshots of the plaintiff, and the plaintiff's

photograph on his Facebook page, Investigator Bultman identified the plaintiff as the Redbox suspect. (R 18 - 2, Exh. "B" – Decl. of Joseph T. Bultman at ¶¶ 6–7.)

Since the crimes involving use of the financial transaction card occurred in a separate jurisdiction, Richmond County, Investigator Bultman contacted the Richmond County Sheriff's Office and met with Richmond County Investigator Jon Hixon. (R 18 – 2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 9; R 18 – 3, Exh. "C"– Depo. of Joseph T. Bultman at p. 23.) He met with Investigator Hixon at the Richmond County Sheriff's Office and presented him with the evidence he had. Investigator Bultman and Investigator Hixon compared the previous mugshots of the plaintiff and the plaintiff's Facebook photograph with the Redbox suspect seen on surveillance video. They reviewed the evidence with Investigator Hixon's supervisor, Steve Fanning, and other investigators in the Richmond County Sheriff's Office, Kris Lapham and William Hornsby. (R 18 – 3, Exh. "C" – Depo. of Joseph T. Bultman at pp. 23-24, 42-43; R 18 – 5, Exh. "E" – Depo. of Jon Hixon at pp. 16-17.) All five law enforcement officers agreed that the plaintiff was the Redbox suspect. (R 18 – 3, Exh. "C" – Depo. of Joseph T. Bultman at pp. 42-43; R 18 – 5, Exh. "E" – Depo. of Jon Hixon at pp. 16-17.)

After his review of the evidence provided by Investigator Bultman as well as photographs of the plaintiff contained in Richmond County's LERMS System, Investigator Hixon prepared arrest warrant applications and obtained warrants for

the arrest of the plaintiff from Judicial Officer Courtney McCord. (R 18 – 6, Exh. "F" – Richmond County Sheriff's Office Case File.) The arrest warrants signed by the judicial officer set forth that probable cause existed for the arrest of the plaintiff. (R 18 – 6, Exh. "F" – Richmond County Sheriff's Office Case File.)

On April 8, 2019, the plaintiff was a passenger in an automobile that was involved in an accident in Richmond County. (R 5 – Corrected Complaint at ¶ 9; R 18 – 7, Exh. "G" – Depo. of Plaintiff at p. 22.) The officer who responded to the accident scene checked the IDs of those persons involved in the accident and ran a criminal history check, which found two outstanding warrants on the plaintiff. (R 5 – Corrected Complaint at ¶ 10.) The plaintiff was arrested on the outstanding warrants and was taken to the Richmond County Jail, where he bonded out within a few hours. (R 5 – Corrected Complaint at ¶ 11; R 18 – 7, Exh. "G" – Depo. of Plaintiff at p. 22.)

The District Attorney brought an Accusation against the plaintiff for two counts of financial transaction card fraud. (R 18 – 1, Exh. "A" – Superior Court of Richmond County, State of Georgia v. George Angel Harris, 2019-RCCR-960 / Accusation.) The District Attorney later nolle prossed the charges after assessing that there was "no longer sufficient evidence to prove guilt beyond a reasonable doubt." (R 18 – 1, Exh. "A" – Superior Court of Richmond County, State of Georgia

v. George Angel Harris, 2019-RCCR-960 / Motion to Nolle Prosequi and Order.)

The plaintiff filed the case *sub judice* on October 9, 2020. (R 1– Complaint.)

## C.  STANDARD OF REVIEW

The plaintiff has appealed the District Court's Order granting summary judgment to Investigator Bultman.  This Court reviews the District Court's grant of summary judgment *de novo*.  Thayer v. Randy Marion Chevrolet Buick Cadillac, LLC, 30 F. 4th 1290, 1292 (11th Cir. 2022); Dotson v. United States, 30 F. 4th 1259, 1264 (11th Cir. 2022).

The plaintiff has also appealed the District Court's Order granting Investigator Bultman's Motion to Exclude Opinion Testimony of the plaintiff's expert witness pursuant to Daubert.  This Court reviews a trial court's decision to exclude an expert's testimony pursuant to Daubert under an abuse of discretion standard.  Kilpatrick v. Breg, Inc. 613 F. 3d 1329, 1334 (11th Cir. 2010).  "This standard of review requires that [this Court] defer to the district court's ruling unless it is 'manifestly erroneous.'"  Id. at 1334-35 (quoting Rink v. Cheminova, Inc., 400 F. 3d 1286, 1291 (11th Cir. 2005)).

## SUMMARY OF THE ARGUMENT

Consistent with the established law of this Circuit, the District Court properly granted summary judgment to Columbia County Sheriff's Office Investigator Bultman on the basis of qualified immunity.  Investigator Bultman conducted a

proper investigation into the theft of a victim's debit card and the use of the card at two Red Box DVD kiosks. As part of his investigation, Investigator Bultman obtained and reviewed security camera footage of the crime suspect, whom he believed was the plaintiff. Investigator Bultman's belief was based upon two previous encounters with the plaintiff, his review of mugshots of the plaintiff from previous bookings, his review of the plaintiff's photograph on his Facebook page, and a comparison of the information he had reviewed with the security camera footage.

Since the crimes involving the use of the financial transaction card occurred in a separate jurisdiction, Richmond County, Investigator Bultman contacted Richmond County Investigator Jon Hixon, met with him, presented the evidence that he had, and turned the case over to the Richmond County Sheriff's Office. Investigator Bultman, Investigator Hixon, and three other law enforcement officers in the Richmond County Sheriff's Office reviewed the evidence, and all agreed that the plaintiff was the individual captured on the security camera footage. Investigator Hixon then proceeded to obtain an arrest warrant, which set forth that probable cause existed for the arrest of the plaintiff.

Under the law of this Circuit, Investigator Bultman's conduct is the type that qualified immunity is meant to protect. It was a reasonable mistake in the legitimate performance of an officer's duties. He had no reason to believe that the perpetrator

was anyone other than the plaintiff, given his extensive previous interactions with the plaintiff, his review of the photographs of the plaintiff, his comparison of those photographs with surveillance video footage of the Red Box suspect, and the fact that four other law enforcement officers all shared the same belief that the plaintiff was the Red Box suspect. Investigator Bultman had, at the least, arguable probable cause to believe that the plaintiff was the suspect, and the plaintiff failed to meet his burden of showing Investigator Bultman was not entitled to qualified immunity.

Additionally, the District Court properly exercised its gatekeeper function and excluded the testimony of the expert witness retained by the plaintiff on numerous grounds. The District Court properly found that the expert failed to outline the basis of his opinions because he did not explain what standard he relied upon when stating his findings. The District Court correctly determined that the expert did not explain how he reached his conclusions based on his experience and training. Overall, his testimony was lacking in that it does not answer the question of how his experience is reliably applied in this case. Moreover, the District Court properly concluded that the expert only made the same arguments that counsel could put forth, and thus his testimony would not be helpful to a jury. The District Court additionally properly determined that the expert's proposed testimony would have a prejudicial effect substantially outweighing the proposed testimony's probative value. The plaintiff

fails to demonstrate that the District Court's exclusion of the expert was an abuse of discretion.

**ARGUMENT AND CITATION OF AUTHORITY**

**I. THE DISTRICT COURT CORRECTLY DETERMINED THAT INVESTIGATOR BULTMAN WAS ENTITLED TO QUALIFIED IMMUNITY, SINCE HIS IDENTIFICATION OF THE PLAINTAIFF AS A CRIMINAL SUSPECT WAS A REASONABLE MISTAKE IN THE LITIGIMATE PERFORMANCE OF HIS LAW ENFORCEMENT DUTIES AND SINCE HE HAD AT LEAST ARGUABLE PROBABLE CAUSE TO BELIEVE THAT THE PLAINTIFF WAS THE SUSPECT.**

The plaintiff has brought claims against Investigators Bultman and Hixon, in their individual capacities, pursuant to 42 U.S.C. § 1983, seeking recovery for violations of the Fourth Amendment's prohibition against unreasonable seizures. The plaintiff's claims against the two investigators are brought under separate legal theories. The plaintiff's claims against Investigator Hixon are based upon alleged flaws contained in the arrest warrant affidavit executed by Investigator Hixon and an alleged failure by Investigator Hixon to conduct a reasonable investigation. (Brief of Appellant at pp. 21, 25.) The plaintiff's claim against Investigator Bultman arises from his alleged failure to conduct a reasonable investigation. (Brief of Appellant at p. 25.)

"Because § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' . . . each defendant is entitled to an independent qualified-immunity analysis as it relates to

his or her actions and omissions." Alcocer v. Mills, 906 F. 3d 944, 951 (11th Cir. 2018) (citation omitted). This Court has cautioned that it "must be careful to evaluate a given defendant's qualified-immunity claim, considering only the actions and omissions in which that particular defendant engaged." Id.; see also, Mathews v. Wetherbee, 839 F. App'x 395, 396 (11th Cir. 2020). In the instant case, the District Court performed the independent qualified-immunity analysis for each defendant outlined by this Court (R 50 – pp. 22, 30), and properly determined that Investigator Bultman was entitled to qualified immunity.

A.    FEDERAL LAW CLAIM AGAINST INVESTIGATOR BULTMAN.

The plaintiff's arrest in this case grew out of the arrest warrants issued by Judicial Officer Courtney McCord on February 20, 2019 upon Investigator Hixon's warrant application and the District Attorney's subsequent prosecution of him. (R 18 – 1, Exh. "A" – Superior Court of Richmond County, State of Georgia v. George Angel Harris, 2019 – RCCR – 960 / Accusation; R 18 – 6, Exh. "F" – Richmond County Sheriff's Office Case File.) This Court has held that a claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests. Spinnenweber v. Williams, 825 F. App'x 730, 732-33 (11th Cir. 2020); Williams v. Aguirre, 965 F. 3d 1147, 1158 (11th Cir. 2020). A state judicial officer's issuance of a warrant extinguishes any claim for a false arrest or imprisonment. Spinnenweber, 825 F. App'x at 733. Accordingly, the

plaintiff's § 1983 claim in the present case is necessarily towards the legal process, rather than the absence of legal process, and is analyzed as a § 1983 malicious prosecution claim under the Fourth Amendment.  Id.; Williams, 965 F. 3d at 1158.

B.    INVESTIGATOR BULTMAN IS ENTITLED TO QUALIFED IMMUNITY WITH RESPECT TO THE PLAINTIFF'S § 1983 CLAIM AGAINST HIM.

1.    The Parameters of Qualified Immunity

Qualified immunity is a judicially created affirmative defense under which government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory rights or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Rushing v. Parker, 599 F. 3d 1263, 1265 (11th Cir. 2010). Qualified immunity protects from suit all but the plainly incompetent or those who knowingly violate the law. Carr v. Tatangelo, 338 F. 3d 1259, 1266 (11th Cir. 2003). To receive qualified immunity, a government official must first demonstrate that he was acting within the scope of his discretionary authority when the alleged violations occurred. Rushing, 599 F. 3d at 1265. To determine whether the government official was acting under the scope of his discretionary authority, courts consider whether the official "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through

means that were within his power to utilize." <u>Holloman v. Harland</u>, 370 F. 3d 1252, 1265 (11th Cir. 2004).

Law enforcement officers who conduct a criminal investigation and who apply for and receive an arrest warrant are engaged in discretionary functions. <u>Strolis v. Heise</u>, 834 F. App'x 523, 526 (11th Cir. 2020); <u>Rich v. Dollar</u>, 841 F. 2d 1558, 1564 (11th Cir. 1988). It is undisputed that Investigator Bultman's investigation into the financial transaction card crimes and his presenting the evidence he had gathered to Richmond County Investigator Hixon were within the scope of his discretionary authority as a Columbia County Sheriff's Office Investigator. (R 18 – 2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 13; R 19 – pp. 4 – 5, Statement of Undisputed Material Fact No. 22; R 39 – p. 3, Response to Statement of Undisputed Material Fact No. 22.)

Once a defendant establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to overcome qualified immunity. <u>Rushing</u>, 599 F. 3d at 1265. "In order to defeat the government official's qualified immunity defense, the plaintiff must prove that (1) the official "'violated [his] federal constitutional… rights, and (2) that those rights were clearly established at the time the officer acted.'" <u>Id</u>. at 1265-66 (citations omitted).

A §1983 claim for malicious prosecution requires the plaintiff to show both the elements of the common law tort of malicious prosecution and an unreasonable

seizure in violation of the Fourth Amendment. <u>Boyette v. Adams</u>, 2022 U.S. App. LEXIS 28473, at *16 (11th Cir. Oct. 13, 2022); <u>Smith v. Mitchell</u>, 856 F. App'x 248, 249 (11th Cir. 2021); <u>Wood v. Kessler</u>, 323 F. 3d 872, 881 (11th Cir. 2003). To prove that he has suffered an unreasonable seizure in violation of the Fourth Amendment, the plaintiff must establish (1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process. <u>Laskar v. Hurd</u>, 972 F. 3d 1278, 1284 (11th Cir. 2020). For purposes of a §1983 claim, the constituent elements of the common law tort of malicious prosecution are: (1) a criminal prosecution instituted or continued by the present defendant, (2) with malice and without probable cause, (3) that terminated in the plaintiff accused's favor, and (4) caused damage to the plaintiff accused. <u>Smith v. Mitchell</u>, 856 F. App'x at 249; <u>Paez v. Mulvey</u>, 915 F. 3d 1276, 1285 (11th Cir. 2019); <u>Wood</u>, 323 F. 3d at 881.

In determining whether qualified immunity exists, the issue is not probable cause in fact but arguable probable cause. <u>Rushing</u>, 599 F. 3d at 1266. To receive qualified immunity, an officer need not have actual probable cause, but only "arguable" probable cause. <u>Brown v. City of Huntsville</u>, 608 F. 3d 724, 733 (11th Cir. 2010). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have

believed that probable cause could have existed to arrest." Rushing, 599 F. 3d at 1266 (citations omitted).

> 2. A Reasonable Misidentification in the Legitimate Performance of an Officer's Duties Is Protected by Qualified Immunity.

This Court's precedents governing mistaken arrests grow out of Rodriguez v. Farrell, 280 F. 3d 1341 (11th Cir. 2002). In Rodriguez, this Court examined a plaintiff's allegation that officers violated his constitutional rights by arresting him pursuant to a warrant for the actual perpetrator who used the same name as the plaintiff. Id. at 1343. The plaintiff and the other individual had many similar physical features; however, they had several distinguishing features, including most prominently, a five-inch difference in height. This Court held that it must evaluate the totality of the circumstances surrounding the arrest to determine its reasonableness. Id. at 1347. Recognizing that a police officer's mistaken belief of fact can properly contribute to a probable cause determination and can count just as much as a correct belief as long as the mistaken belief was reasonable in light of all of the circumstances, this Court held that a mistaken estimate of no more than five inches does not equal a constitutional violation and concluded that the defendant officers were entitled to qualified immunity. Id. at 1347–48.

In Rushing v. Parker, this Court examined a §1983 claim brought against sheriff's officers who misidentified and arrested the plaintiff, an individual named Scott R. Rushing. 599 F. 3d 1263. The crime victim in Rushing reported to the

sheriff's office that a roofer he hired to repair hurricane damage to his house had victimized him. Id. at 1265. The victim had filed a complaint against "Scott Rushing" and had identified the plaintiff as the perpetrator in a photo line-up. Id. at 1268. This Court applied the principles set forth in Rodriguez concerning the reasonableness of the officers' decisions with respect to probable cause. Id. at 1267. The Court concluded that while the officers' investigation was by no means perfect, there was no evidence that the officers had reason to believe the perpetrator was anyone other than the plaintiff. Accordingly, there was, at a minimum, arguable probable cause to issue the arrest affidavit, and the officers were entitled to summary judgment. Id. at 1268-69.

In other cases, this Court and district courts within the Circuit have held that claims for unreasonable seizures under the Fourth Amendment were not cognizable as a matter of law when law enforcement officers reasonably misidentify plaintiffs. This Court, in Williams v. City of Montgomery, examined a claim by the plaintiff, Brandon Williams, who closely resembled his brother, Braxton Williams. 839 F. App'x 356 (11th Cir. 2020). The Court determined that the officers in Williams reasonably, but mistakenly, identified the plaintiff for his brother, and granted qualified immunity to the officers on the plaintiff's false arrest / false imprisonment claim. Id. at 361.

In <u>Chapman v. City of Atlanta</u>, 192 F. App'x 922 (11th Cir. 2006), this Court examined the case of a plaintiff who had mistakenly been arrested under a warrant issued for an individual named "Margret Irene Chapman." Margret Irene Chapman was a black female. The plaintiff, whose name was "Margret Chapman," was a white female who was 40 pounds lighter than the Margret Irene Chapman listed on the arrest warrant. Finding that there were similarities between the names, birth dates, ages, and sex of the two individuals, this Court held that no constitutional violation resulted from the misidentification of the plaintiff in that case. <u>Id</u>. at 925.

The United States District Court for the Northern District of Georgia examined a misidentification in <u>Rogers v. City of College Park</u>, 2019 U.S. Dist. LEXIS 149072 (N.D. Ga. Sept. 3, 2019). In <u>Rogers</u>, the victim of the crime had identified the criminal suspect as "Rodrick Rodgers" who was a black male, in his mid-40s, with a slender build, approximately 6'1" or 6'2" tall, and with dark skin. <u>Id</u>. at *2. The law enforcement officers in Rogers ran the name of the suspect through a computer software system used by the police department, mistakenly entering the name they were seeking as "Roderick Rogers." The system identified the plaintiff, Roderick Rogers, who was a 40-year-old black male, 6'2" tall, and 205 pounds. <u>Id</u>. at *17. The district court granted the officers qualified immunity, finding that there had been no violation of the plaintiff's constitutional rights and that the plaintiff

failed to show that the right was clearly established at the time of the alleged violation. Id. at *26, 33.

In Johnson v. Darnell, 2018 U.S. Dist. LEXIS 130747 (N.D. Fla. July 13, 2018), adopted by, 2018 U.S. Dist. LEXIS 129753 (N.D. Fla. Aug. 2, 2018), aff'd, 781 F. App'x 961 (11th Cir. 2019), the court examined a misidentification that led to the arrest of the plaintiff. The suspect driver in Johnson had abandoned a vehicle and left a driver's license containing the name of the plaintiff on the top center console of the vehicle. The law enforcement officers prepared a warrant affidavit for the plaintiff's arrest. The court granted qualified immunity to the officers because the misidentification mistake based on similarities between the picture contained on the driver's license and the suspect observed by the officers was reasonable under the circumstances. Id. at *18.

Towns v. Beseler, 2016 U.S. Dist. LEXIS 141158 (M.D. Fla. Oct. 12, 2016), involved a shoplifting incident in which the shoplifter's purported Florida identification card was in the name of the plaintiff. The investigating officer believed the photograph on the identification card that he reviewed matched the person he had in custody. After the officer released the shoplifter and issued a notice for him to appear in court, the plaintiff did not show up to court, since he was not the shoplifter and did not receive the notice. An arrest warrant was issued for the plaintiff's arrest. The court held that both officers involved in the incident leading to

the arrest of the plaintiff were entitled to qualified immunity because the misidentification was a reasonable mistake. Id. at *31, 37.

Other district court cases within this Circuit have similarly held that claims based upon reasonable misidentification mistakes were not cognizable as a matter of law. See, e.g., Cherry v. Barnard, 2012 U.S. Dist. LEXIS 30693 (M.D. Fla. Mar. 8, 2012) (reasonable mistake where a plaintiff was arrested on a warrant issued for someone else who had the same name as the plaintiff); Robinson v. City of Atlanta, 2007 U. S. Dist. LEXIS 46088 (N.D. Ga. June 26, 2007) (it was a reasonable mistake for officers to arrest the plaintiff, Tressy Robinson, a white/female, on a warrant that had been issued for the arrest of Tammie Robinson, a black/female).

3.  Under the Totality of the Circumstances, Investigator Bultman's Identification of the Plaintiff as the Red Box Suspect Was Reasonable, and Arguable Probable Cause Existed for the Plaintiff's Arrest Warrant.

In order to defeat Investigator Bultman's qualified immunity, the burden belongs to the plaintiff to prove that Investigator Bultman violated his federal constitutional rights and that those rights were clearly established at the time that Investigator Bultman conducted his investigation. This the plaintiff cannot do.

Investigator Bultman had two separate previous encounters with the plaintiff, totaling between one and one-and-a-half hours. (R 18 – 3, Exh. "C" – Depo. of Joseph T. Bultman at p. 18.) He reviewed several mugshots of the plaintiff contained within the Columbia County Sheriff's Office internal database and a photograph of

the plaintiff posted on Facebook. In addition to the age similarity between the plaintiff and the Redbox suspect, Investigator Bultman had observed several distinctive aspects of the plaintiff's appearance that resembled the Redbox suspect. In particular, the plaintiff's skin tone, dreadlocks, general facial characteristics, and eyebrows were similar to those of the Redbox suspect (R 18 – 2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 7.) After comparing the plaintiff's previous mugshots and Facebook photograph with the surveillance video of the Redbox suspect and after having had two previous personal encounters with the plaintiff, Investigator Bultman sincerely and reasonably believed that the plaintiff was the Redbox suspect. (R 18 – 2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 14.)

Investigator Bultman reviewed this evidence with Investigator Hixon and three other law enforcement officers with the Richmond County Sheriff's Office. They all believed that the plaintiff was, indeed, the Redbox suspect. Investigator Bultman did not harbor doubts concerning the identification of the plaintiff as the Redbox suspect. (R 18 – 2, Exh. "B"– Decl. of Joseph T. Bultman at ¶ 14.)

As set forth above, it is the plaintiff's burden under the qualified immunity analysis to prove that Investigator Bultman violated his federal constitutional rights and that those rights were clearly established at the time that Investigator Bultman conducted his investigation. In this regard, there are several elements of a §1983 malicious prosecution claim that the plaintiff cannot prove. First, the plaintiff must

show that the legal process justifying his seizure was constitutionally infirm. Laskar, 972 F. 3d at 1284. "An arrest based on a reasonable mistake in identity does not violate the Fourth Amendment." Williams, 839 F. App'x at 360 (citing Rodriguez, 280 F. 3d at 1346-48). In his investigation, Investigator Bultman had assessed the physical similarities between the plaintiff and the Redbox suspect. The two individuals were of a similar age, had similar skin tone, had dreadlocks, had similar facial characteristics, and had similarly shaped eyebrows. (R 18 – 2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 7.) As detailed by this Court's authority cited above regarding misidentification cases, viewed under the totality of circumstances surrounding his investigation, Investigator Bultman's assessment that the plaintiff was the Redbox suspect was reasonable and did not give rise to a constitutional violation.

Second, the plaintiff cannot show that the criminal prosecution of the plaintiff was instituted or continued by Investigator Bultman, which is the first element of the common law tort of malicious prosecution that comprises a §1983 claim. Smith v. Mitchell, 856 F. App'x at 249. While Investigator Bultman fully believed that the plaintiff was the Redbox suspect and conveyed his belief to Investigator Hixon when he turned the case over to the Richmond County Sheriff's Office, the plaintiff must show that the criminal prosecution was instituted or continued by Investigator Bultman. "A police officer is not the legal cause of a malicious prosecution when he

is not 'responsible for the decision to prosecute and…[did not] improperly influence[] the decision to prosecute.'" Deegan v. Homestead Police Dep't, 750 F. App'x 796, 798 (11th Cir. 2018) (citing Eubanks v. Gerwen, 40 F. 3d 1157, 1160-61 (11th Cir. 1994)). The intervening acts of others that took place between Investigator Bultman's presenting the evidence to Investigator Hixon and the prosecutor filing the Accusation against the plaintiff each break the chain of causation unless the plaintiff can show that these intervening acts were the result of deception or undue pressure by Investigator Bultman. Barts v. Joyner, 865 F. 2d 1187, 1195-96 (11th Cir. 1989). There is no evidence of deception or undue pressure by Investigator Bultman, and the plaintiff cannot establish the first element of a common law malicious prosecution claim – that the criminal prosecution was instituted or continued by Investigator Bultman.

Third, the plaintiff cannot establish that Investigator Bultman acted with malice and without probable cause during his investigation. This is the second part of the test for the common law tort of malicious prosecution, which is required to establish a §1983 malicious prosecution claim. Smith v. Mitchell, 856 F. App'x at 249; Paez, 915 F. 3d at 1285. This Court has recently held that "the relevant common-law principles are those that were 'well settled at the time of section 1983's enactment." Luke v. Gulley, 50 F. 4th 90, 2022 U.S App. LEXIS 27631, at *13 (11th

Cir. Oct. 3, 2022) (quoting <u>Williams v. Aguirre</u>, 965 F. 3d at 1159, and adopting alteration from <u>Nieves v. Bartlett</u>, 139 S. Ct. 1715, 1726 (2019)).

In <u>Nieves</u>, the Supreme Court held that at the time that § 1983 was enacted in 1871, the common law tort of malicious prosecution 'required the plaintiff to show that the criminal charge against him 'was unfounded, and that it was made without reasonable or probable cause, and that the defendant in making or instigating it was actuated by malice.'" <u>Nieves</u>, 139 S. Ct. at 1726 (quoting <u>Wheeler v. Nesbitt</u>, 65 U.S. 544, 549-50 (1861), and citing Restatement of Torts § 653 (1938)). A lack of probable cause and the defendant being motivated by malice are two separate elements of the tort. <u>Wheeler</u>, 65 U.S. at 550. "Want of reasonable and probable cause is as much an element in the action for a malicious criminal prosecution as the evil motive which prompted the prosecutor to make the accusation … ." <u>Id</u>. at 550. Under the common law tort of malicious prosecution, a plaintiff was required to "show that the defendant acted from malicious motives in prosecuting him." <u>Id</u>. at 551. As explained in the 1938 version of the Restatement of Torts cited by the Supreme Court in <u>Nieves</u>, the malice element of the common law tort of malicious prosecution required a demonstration that the person who initiated the criminal proceedings acted "primarily because of a purpose other than that of bringing an offender to justice." Restatement of Torts § 653(1)(a)(ii)(1938). The principal situations in which criminal proceedings are initiated for an improper purpose are:

(1) where the accuser does not believe in guilt of the accused, (2) where the proceedings are initiated primarily because of hostility or ill will toward the accused, or (3) where the proceedings are initiated for the purpose of obtaining a private advantage even though such advantage might legitimately have been obtained in civil proceedings. Restatement of Torts § 668, Comment d (1938).

In this case, there is no evidence that Investigator Bultman had any personal animus, ill will, or spite toward the plaintiff. (R 18 – 2, Exh. "B" – Decl. of Joseph T. Bultman at ¶ 15.) He had no malice in presenting his evidence to Investigator Hixon. (R 18 – 2, Exh. "B"– Decl. of Joseph T. Bultman at ¶¶ 9, 15.) The malice element is completely absent.

Moreover, Investigator Bultman had probable cause, or at least arguable probable cause, to believe that the plaintiff was the Redbox suspect. There is no evidence that he had any reason to believe that the perpetrator was anyone other than the plaintiff, given his previous interactions with the plaintiff and his review of photographs of the plaintiff, his comparison of these photographs with the surveillance video footage of the Redbox suspect, and the fact that four other law enforcement officers all shared the same belief that the plaintiff was the Redbox suspect. The plaintiff even describes Investigator Bultman's action as having "mistakenly identified" him as the suspect in the video. (Brief of Appellant at p. 11.) Investigator Bultman's positive identification of the plaintiff as the Redbox

suspect, even if mistaken, was such that reasonable officers in the same circumstances and possessing the same knowledge as that possessed by Investigator Bultman could have believed that probable cause existed to arrest. Rushing 599 F. 3d at 1267. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Hunter v. Bryant, 502 U.S. 224, 227 (1991). Investigator Bultman's conduct here is the type that qualified immunity is meant to protect—a reasonable mistake in the legitimate performance of an officer's duties. Rushing, 599 F. 3d at 1267.

4.    Investigator Bultman Conducted a Proper Investigation.

The plaintiff contends that Investigator Bultman failed to conduct a reasonable investigation. (Brief of Appellant at pp. 25-30.) This Court has held that while an arresting officer is required to conduct a reasonable investigation to establish probable cause, the officer "need not take 'every conceivable step… at whatever cost, to eliminate the possibility of convicting an innocent person.'" Rankin v. Evans, 133 F. 3d 1425, 1435-36 (11th Cir. 1998) (citations omitted). A police officer "is not required to explore and eliminate every theoretically possible claim of innocence before making an arrest." Kingsland v. City of Miami, 382 F. 3d 1220, 1229 (11th Cir. 2004) (citation omitted), abrogated in part on other grounds by, Williams v. Aguirre, 965 F. 3d 1147.

Here, Investigator Bultman (1) contacted the crime victim's financial institution, (2) obtained transaction details of when the debit card had been used, (3) learned that the card had been used at two Redbox DVD kiosks and two Circle K gas stations, (4) went to the gas stations and Redbox locations and viewed security camera footage, (5) observed the Redbox suspect on the security camera footage, (6) had two previous encounters with the plaintiff totaling between one and one-and-one half hours, (7) reviewed mugshots of the plaintiff and a Facebook photograph of the plaintiff,[3] (8) compared those images and his personal knowledge of the plaintiff with the security video footage, (9) attempted to located cameras in the area of the Evans Fitness Express where the break-in occurred, (10) attempted to make contact with the plaintiff, and (11) went and met with Investigator Hixon and other Richmond County Sheriff's Office officers to present the evidence he had obtained and turn the case over to the Richmond County Sheriff's Office. (R 18-2, Exh. "B" – Decl. of Joseph T. Bultman at ¶¶ 4-9; R 29, Depo. of Joseph T. Bultman at p. 34.)

Investigator Bultman conducted a reasonable investigation before turning the case over to the Richmond County Sheriff's Office. Investigator Bultman's

---

[3] The plaintiff submitted to the District Court undated photographs of him without laying any proper evidentiary foundation. (R 38-4 through 38-6.) He also included two of these photographs in his Brief of Appellant. (Brief of Appellant at pp. 13-14.) There is no evidence that Investigator Bultman reviewed these photographs during the course of his investigation in early 2019, and they have been submitted to simply confuse the issues before the Court.

investigation was similar to that conducted by a probation officer who submitted an arrest warrant application in <u>Washington v. Rivera</u>, 939 F. 3d 1239 (11th Cir. 2019). In <u>Washington</u>, this Court determined that the probation officer was entitled to qualified immunity in a case brought against her under §1983, holding:

> This is not, then, a situation in which the defendant officer engaged in 'no investigation,'…Drawing a logical inference from facts you possess constitutes at least *some* examination of the evidence at hand….[T]his is not a case in which [the defendant] possessed some inculpatory evidence and some exculpatory evidence, and rendered herself willfully blind to the latter while devoting herself to believing in the former. … She did not have any evidence that would give rise to serious doubts about [the plaintiff's] guilt. She did not deliberately ignore proffered evidence of innocence.

<u>Id</u>. at 1247-48. Just as in <u>Washington</u>, Investigator Bultman conducted a reasonable investigation, did not deliberately ignore exculpatory evidence, and did not possess evidence that would give rise to serious doubts about the plaintiff being the Redbox suspect.

While the plaintiff contends that he is entitled to recover in this §1983 action because he "was arrested for a warrant he knew nothing about" after being misidentified as the Redbox suspect, this Court has recognized that "'the Constitution does not guarantee that only the guilty will be arrested. If it did, §1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released.'" <u>Green v. City of Lawrenceville</u>, 745 F. App'x 881, 884-85 (11th Cir. 2018) (citation omitted). In fact, this Court in <u>Green</u> affirmed the dismissal of

an innocent plaintiff's complaint under Rule 12(b)(6), concluding that the defendant detective conducted a reasonable investigation and had probable cause to arrest the plaintiff for financial transaction card fraud concerning *her own* debit card months after the debit card had been stolen.  Id. at 884.  Investigator Bultman conducted a reasonable investigation and did not ignore exculpatory evidence.

The plaintiff also relies on two cases that have no bearing on the circumstances surrounding the plaintiff's arrest:  Cozzi v. City of Birmingham, 892 F. 3d 1288 (11th Cir. 2018), and Hooks v. Brewer, 2018 U.S. Dist. LEXIS 231837 (S.D. Ga. Jan. 29, 2018), aff'd in part and rev'd in part, 818 F. App'x 923 (11th Cir. 2020).  (Brief of Appellant at pp. 25-30.)  Neither Cozzi nor Hooks applies to the facts of this case.

Cozzi involved the arrest of an individual, Cozzi, after law enforcement officers received anonymous tips that he resembled a robbery suspect.  Cozzi, 892 F. 3d at 1292.  After receiving these anonymous tips, a law enforcement detective applied for and received a search warrant for Cozzi's home.  When detectives arrived at Cozzi's house to execute the warrant, they encountered him outside, detained him there, and searched the inside of his house and truck, finding no evidence linking him to the robberies.  Id.  The detectives showed Cozzi's roommate a photograph of the perpetrator at the crime scene, and the roommate told one of the detectives that the individual in the picture was not Cozzi, explaining that the robbery suspect in

the photographs had numerous tattoos, while Cozzi only had one. Id. Even though Cozzi was standing right outside the home, the detective failed to examine Cozzi's tattoo or even ask about it. Id. This Court affirmed the denial of qualified immunity to the detective because he chose to ignore exculpatory evidence that was readily available to him at the time he executed the search warrant. Id. at 1294, 1297.

In Hooks, a law enforcement official submitted an affidavit to obtain a search warrant that contained several misstatements and material omissions. 818 F. App'x at 928. The affidavit recited information from a prior investigation of a separate individual in which the separate individual had told police that the subject of the search warrant, Hooks, was redistributing meth, when the other individual never said as much. Id. The investigation involving the separate individual had occurred five years earlier, police never interviewed Hooks in that case, and no file was ever opened in that case. However, the affidavit submitted for the search warrant failed to include any of this material information. Id. Additionally, the law enforcement official included specious and inaccurate information from a drug-addicted source in the warrant application. Id. at 928-29. This Court held that the law enforcement official was not entitled to qualified immunity because his affidavit contained these various misstatements and omissions, which rendered the warrant affidavit so hollow as to be meaningless. Id.

There is no evidence in the present case that Investigator Bultman (or Investigator Hixon) provided false or misleading evidence concerning the plaintiff. Investigator Bultman did not choose to disregard exculpatory evidence that was offered to him or elect not to obtain easily discoverable facts that might tend to exculpate the plaintiff. Cozzi, 892 F.3d at 1294. He did not submit any affidavit, much less one that contained lies or omitted critical information. Hooks, 818 F. App'x at 927. Investigator Bultman fully believed that the plaintiff was the Redbox suspect and conveyed his belief to Investigator Hixon when he turned the case over to the Richmond County Sheriff's Office. Investigator Hixon sought the arrest warrant based on his belief that the plaintiff was the suspect. Three other law enforcement officers also assessed the evidence and believed that the plaintiff was the Redbox suspect. While providing false or misleading statements to a magistrate would obviate qualified immunity, that is simply not what occurred here.

C.    THIS COURT'S RECENT DECISION IN LUKE v. GULLEY IS INAPPOSITE TO THE CLAIMS IN THIS CASE.

The plaintiff submitted a Letter of Supplemental Authority citing this Court's recent decision in Luke v. Gulley, 50 F. 4th 90, 2022 U.S. App. LEXIS 27631 (11th Cir. Oct. 3, 2022), in support of his claim that Investigator Hixon presented a flawed affidavit to the judicial officer who issued the warrant for the arrest of the plaintiff. (Appellant's Letter of Supplemental Authority dated October 4, 2022.) The plaintiff's argument concerning Luke applies only to his claim against Investigator

Hixon and not to his claim against Investigator Bultman. Even so, the decision in Luke is inapposite to the claims presented in this appeal.

In Luke, this Court considered the issue of whether a detective was entitled to qualified immunity in a § 1983 malicious prosecution claim. This Court concluded that he was not because the arrest warrant application he prepared lacked sufficient information to provide the magistrate judge with probable cause to issue the warrant. 2022 U.S. App. LEXIS 27631. Accordingly, this Court determined that the arrest warrant was constitutionally infirm. Id. at *10-14.

Luke, however, is distinguishable from the circumstances surrounding the arrest warrant application submitted by Investigator Hixon in a number of important respects. First, the detective in Luke admitted that his affidavit lacked sufficient information to provide the magistrate judge probable cause to issue the arrest warrant. Id. at *10-11. In the case *sub judice*, Investigator Hixon submitted detailed information concerning the crimes committed at the two Red Box locations to provide the judicial officer the probable cause to issue the arrest warrant. (R 22 – 8, Depo. of Jon Hixon at pp. 46-52; R 22 – 5 - pp. 10-15.)

Second, the affidavit in Luke was devoid of relevant and material facts from which one could infer that the plaintiff in that case committed murder. Id. at *11. Here, the affidavits submitted by Investigator Hixon detailed that: (1) the victim's financial transaction card had been stolen, (2) the card was used at two separate Red

Box movie rental locations, (3) the transactions were caught on videotape by the respective businesses where the Red Box kiosks were located, and (4) the person making the transactions was identified as the plaintiff. (R 22 – 5 – pp. 10-15.)

Third, the detective in <u>Luke</u> received information from an informant that a "David Luke" had jumped out of a vehicle with a gun immediately prior to the shootout with member of a rival gang. The informant also selected David Luke's picture from a photographic array. <u>Id</u>. at *3-4. However, once further investigation eliminated David Luke as a suspect, the detective "deduced" that the informant really meant to identify the plaintiff, Demetrius Luke, who was David Luke's brother. <u>Id</u>. at *4-5. The detective then averred in the warrant affidavit that Demetrius Luke shot and killed the rival gang member and that warrant affidavit was based on "eye witness verbal statements." <u>Id</u>. at *5. In the present case, Investigator Hixon did not change information that had been provided to him by an eyewitness before placing that information in the warrant affidavit. Investigator Hixon and four other law enforcement officers, including Investigator Hixon's supervisor, reviewed the videos of the suspect and the photographs of the plaintiff before concluding that the plaintiff was the Red Box suspect. (R 18 – 3, Exh. "C" – Depo. of Joseph T. Bultman at pp. 23-24, 42-43; R 18 – 5, Exh. "E" – Depo. of Jon Hixon at pp. 16-17.) He then included in his warrant application detailed information that the victim's vehicle had been broken into, a debit card stolen, the

card was used at two Red Box kiosks, the use of the card was captured on video, and the plaintiff was identified as the person making the illegal transactions. (R 22 – 5 – pp. 10-15.) Investigator Hixon's Warrant Application and Affidavits consist of far more information than the conclusory allegation deemed insufficient in Luke.

Fourth, the District Court in Luke determined that although the detective's affidavit lacked sufficient information to support a finding of probable cause by the issuing magistrate, the detective, nevertheless, had probable cause to arrest Luke for murder. Id. at *7-8. The District Court here made no such determination. (R 50 – pp. 31-32.)

Thus, this Court held that the arrest warrant in Luke was constitutionally infirm since the detective who applied for the warrant should have known that his application failed to establish probable cause. Id. at *10-12 (citing Williams v. Aguirre, 965 F. 3d at 1165.) No such constitutional infirmity in the arrest warrant exists in the present case, where there is no demonstration that Investigator Hixon should have known that his application failed to establish probable cause. Indeed, Investigator Hixon and four other law enforcement officers, including his supervisor, reviewed the videos and photographs and agreed that the plaintiff was the suspect. The District Court properly concluded that Investigator Hixon made a reasonable mistake and a reasonable officer in the same circumstances could have done the same thing. (R 50 – p. 32.)

Moreover, although the plaintiff does not assert that Investigator Bultman submitted the arrest warrant affidavit (Brief of Appellant at pp. 8, 20-25, and 28 and Appellant's Letter of Supplemental Authority dated October 4, 2022 at p. 1), there is no evidence that Investigator Bultman intentionally or recklessly made misstatements or omissions necessary to support the warrant.  Id. at *10 (citing Williams, 965 F. 3d at 1165.)   Unlike the detective in Luke, who changed information provided by an eyewitness informant and substituted the brother Demetrius Luke for David Luke when he submitted an arrest warrant application, Investigator Bultman did not engage in deception or improperly influence the decision to prosecute.  See Deegan, 750 F. App'x at 798; Barts, 865 F. 2d at 1195-96.  Indeed, there is no evidence that Investigator Bultman had any reason to believe that the Red Box suspect was anyone other than the plaintiff, given his extensive previous interactions with the plaintiff, his review of the photographs of the plaintiff, his comparison of those photographs with surveillance video footage of the Red Box suspect, and the fact that four other law enforcement officers all shared the same belief that the plaintiff was the Red Box suspect.

**II.  THE DISTRICT COURT CORRECTLY GRANTED INVESTIGATOR BULTMAN'S DAUBERT MOTION BECAUSE THE TESTIMONY OF THE PLAINTIFF'S EXPERT DOES NOT SATISFY FEDERAL RULE OF EVIDENCE 702 AND DAUBERT STANDARDS OF ADMISSIBILITY.**

The District Court granted Investigator Bultman's Daubert Motion to exclude the testimony of the plaintiff's expert witness, Timothy Williams. In doing so, the District Court made a number of findings which the plaintiff fails to show were an abuse of discretion. As to methodology, it found that Williams failed to outline the basis of his opinions because he does not explain what standards he relies upon when stating his findings. It found that Williams does not explain how he reaches his conclusions based on his experience and training, and that, overall, his testimony is lacking in that it does not answer the question of how his experience is reliably applied in this case. (R 50 – pp. 12-13.)

As to fit, the District Court found that Williams only provides the same arguments that counsel can put forth and thus his testimony would not be helpful to a jury. Most concerning to the District Court was that if Williams' testimony were to go to a jury, the jury would be misled and believe that just because additional steps were not taken, there was a constitutional violation. It correctly concluded that is not the proper legal standard, because the Fourth Amendment does not list out specific steps investigators must take in order to fulfill their investigative duty. Additionally, the District Court found that Williams' opinions that the photographs

at issue do not look like the plaintiff are unnecessary and not the type of information an expert is to provide to a jury. (R 50 – pp. 13-14.)

The plaintiff argues that the District Court erred and Williams should be permitted to testify that Investigator Bultman's investigation was unreasonable. (Brief of Appellant at p. 33.) This Court reviews the District Court's decision to exclude Williams' testimony only for an abuse of discretion. Kilpatrick, 613 F. 3d at 1343. "[T]he abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment … [and] [t]he size of that range – particularly when dealing with evidentiary issues – is significant … ." Id. The plaintiff acknowledges this is a difficult standard to meet. (Brief of Appellant at p. 39.)

However, the plaintiff has not shown that the District Court applied an incorrect legal standard, followed improper procedures in making its determination, made findings of fact that are clearly erroneous, or applied Rule 702 and the Daubert line of cases in an unreasonable or incorrect manner. See Water Bagel Co. v. Bersin Bagel Grp., LLC, 817 F. 3d 719, 724 (11th Cir. 2016). In fact, the plaintiff hardly addresses the District Court's findings at all, but instead puts forth the same arguments already made in reply to Investigator Bultman's Daubert Motion in the District Court.

In light of Rule 702, the <u>Daubert</u> line of cases, the plaintiff's failure to show how the District Court abused its discretion, and for other reasons set forth below, the District Court's decision to exclude Williams should be affirmed.

A.    <u>RULE 702 AND THE DAUBERT STANDARD</u>

Federal Rule of Evidence 702 sets out five requirements for expert testimony. District courts must ensure that: (1) the testimony will assist the trier of fact, (2) the witness is qualified as an expert, (3) the testimony is based on sufficient facts or data, (4) the testimony is the product of reliable principles and methods, and (5) the witness has applied the principles and methods reliably. Fed. R. Evid. 702. Expert testimony assists the trier of fact if it concerns matters that are beyond the understanding of the average lay person and generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. <u>Knight v. Miami-Dade County</u>, 856 F. 3d 795, 808-09 (11th Cir. 2017). <u>See</u> <u>also</u>, <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993).

A district court acts as a "gatekeeper" for expert testimony concerning scientific, technical, or other specialized knowledge. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999). The court should screen all such testimony for relevance and reliability. <u>Id</u>. at 141-42. The proponent of the expert witness bears the burden of demonstrating that the witness's testimony is both relevant and reliable. <u>Cook v. Sheriff of Monroe County</u>, 402 F. 3d 1092, 1107 (11th Cir. 2005). In establishing

that the expert's testimony is admissible, the proponent may not rely solely on the expert's *ipse dixit*. United States v. Frazier, 387 F. 3d 1244, 1261 (11th Cir. 2004).

There must also be a valid connection to the pertinent inquiry as a precondition to admissibility. Kumho Tire, 526 U.S. at 141. And importantly, Federal Rule of Evidence 403 allows a court to exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Rule 702 vests substantial discretion in the district court. General Elec. Co. v. Joiner, 522 U.S. 136, 141 (1997). A district court may exclude evidence if the testimony is too imprecise and unspecific, if the testimony is connected to the cited data only by expert's *ispe dixit*, if the analytical gap between the data and opinion is too wide, or if the opinion's factual basis is inadequately explained. Cook, 402 F. 3d at 1111. "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough." Id. at 1113.

As this Court held in United States v. Barton:

> This abuse-of-discretion standard 'recognizes the range of possible conclusions the trial judge may reach'…and thus affords the district court 'considerable leeway' in evidentiary rulings…. Accordingly, 'the deference that is the hallmark of abuse-of-discretion review, requires that we not reverse an evidentiary decision of a district court unless the ruling is

manifestly erroneous'…. That is, this Court 'must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard.'

Further, even an abuse of discretion will not warrant reversal where the resulting error was harmless. We 'will not overturn an evidentiary ruling and order a new trial unless the objecting party has shown a substantial prejudicial effect from the ruling.'

909 F. 3d 1323, 1330-31 (11th Cir. 2018) (internal citations omitted).

B.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT EXCLUDED WILLIAMS' TESTIMONY

1.   Williams' Specialized Knowledge Will Not Help the Trier of Fact To Understand the Evidence or To Determine a Fact at Issue.

The plaintiff argues that "Williams' knowledge is beyond the ken of lay jurors and his opinions go to ultimate issues of fact rather than ultimate issues of law." (Brief of Appellant at p. 38.) Yet, by the plaintiff's own admission, Williams does not satisfy the first prong of Rule 702. In his Statement of Facts, the plaintiff cites Williams' opinion that it was unreasonable for Investigator Hixon "to take [Investigator] Bultman's identification at face value." (Brief of Appellant at p. 18.) However, the plaintiff immediately follows that quote by stating that "*[w]ith or without expert testimony*, reasonable jurors can reach the same conclusion.…" (Brief of Appellant at p. 18) (emphasis added). Not only is Williams conflating Investigator Hixon with Investigator Bultman, as he does in his Expert Report, but this is precisely the point. Williams' testimony is unnecessary because with or without

Williams' testimony, reasonable jurors could reach a conclusion about the reasonableness of an investigator's conduct. (See generally, R 38-9, Exh. "9" – Expert Report of Timothy Williams.)

To the extent the plaintiff believes that "the conclusion of Defendant's expert that a reasonable investigation was conducted is no more inadmissible than Williams' conclusion that it was not" and "[e]ither both sides are entitled to their expert or neither side should be," such is irrelevant for purposes of this appeal. (Brief of Appellant at pp. 47-48.) The plaintiff cannot seriously assert that his decision to not file a Daubert motion as to Investigator Bultman's expert justifies a finding of an abuse of discretion by the District Court in excluding Williams. The plaintiff could have filed a Daubert motion criticizing Investigator Bultman's expert if there were grounds to do so. He did not. Thus, Investigator Bultman's expert is not at issue on this appeal; Williams is, and the District Court properly excluded his testimony because it was unhelpful, not based on a reliable methodology, and misleading.

Additionally, while seemingly agreeing that there are lay witnesses who can provide the very information the plaintiff seeks to put forth through Williams, the plaintiff confuses the requirement that expert testimony offer something that lay witnesses cannot with his unsupported concern that lay police officer witnesses will "have [Investigator Bultman's] back." (Brief of Appellant at p. 42.) Otherwise inadmissible expert testimony does not become admissible because it would

allegedly "level the playing field." (Brief of Appellant at p. 42.) Experts are hired to assist the jury in understanding concepts beyond a lay person's understanding, not to make litigation even. Fed. R. Evid. 702. The plaintiff's baseless concerns with the credibility of lay police officer witnesses should be addressed on cross-examination, not by putting forth an expert witness who has neither reviewed the readily available agency-specific standards involved in this case nor articulated a generally accepted law enforcement standard he relies on.

It is true that expert witness testimony need not be necessary, but Williams' proposed testimony is not even helpful. As the District Court points out, even if we assume *arguendo* that Investigator Bultman did not satisfy certain investigative standards, this is not determinative. A constitutional violation does not necessarily stem from a failure to follow an investigative procedure. Even if Investigator *Bultman*'s investigation fell short of investigative standards, Investigator *Hixon*'s investigation alone could have produced the requisite probable cause to secure the plaintiff's arrest warrant. See, e.g., Tanberg v. Sholtis, 401 F. 3d 1151, 1167 (10th Cir. 2005) ("[e]ven if [the defendant officer] violated the [standard operating procedures], this violation would not create a violation of a clearly established constitutional right ex nihilo."). Investigator Bultman's investigative strategies did not violate the plaintiff's constitutional rights simply because Williams says he generally should have done more. Allowing Williams to testify that he, as an expert,

opines that Bultman's conduct fell below investigative standards seriously risks misleading the jury as to what the ultimate issue is. The District Court agreed and explained that its "main concern" is that "the jury would be misled by Mr. Williams' testimony and believe that just because additional steps were not taken, there was a constitutional violation." (R 50 – p. 14.) The plaintiff has not explained how that finding was an abuse of discretion.

Williams' proposed testimony is also cumulative, as shown by Williams' own deposition. He stated, "I can go anywhere in the country…and tell you exactly…where the investigation failed…based upon the standards that are out there. *And you go pull their training curriculum, the answers are there*. And the answers are not different, but they're the same as you see them all across the country." (R 37-1, Exh. "A" – Depo. of Timothy Williams at pp. 46:22-47:6) (emphasis added). If the answers are in the tangible training curriculum, Williams' testimony is not needed. And even if the answers were difficult to ascertain, Williams cannot logically be of use to the jury in understanding the investigative procedures Bultman was to follow when he has not reviewed or relied on them. (R 38-9, Exh. "9" – Expert Report of Timothy Williams at p. 3; R 37-1, Exh. "A" – Depo. of Timothy Williams at pp. 36:21, 37:6-7, 43:6, 58:11.)

Williams' proposed testimony does not offer anything that counsel and lay witnesses cannot present to the jury without an expert. <u>See</u> <u>Knight</u>, 856 F.3d at 808-

09. The District Court agreed (R 50 – pp. 13-14), and the plaintiff has not shown how that finding was an abuse of discretion.

    2.    <u>Williams' Proposed Testimony Is Not Based on Sufficient Facts or Data, His Opinion Is Not the Product of Reliable Principles or Methods, and He Did Not Apply Any Such Principles or Methods Reliably</u>.

Williams' own professional website states that he will "[support] his findings with the requisite policy and procedures of the involved agency." (R 21-1, Exh. "A" at pp. 72-73.) That is because if an expert is to reliably testify that an officer did not meet investigative standards, the policies and procedures designed to ensure investigations are conducted properly must logically be a factor in crafting such an opinion. Surely an expert such as Williams may opine as to "practices and techniques that have been developed through training and experience but not necessarily reduced to written standards." (Brief of Appellant at p. 36.) However, Williams cannot point to any practice or technique, written or not, that Investigator Bultman was to follow. The only guidance Williams offers are the conclusory statements that "[y]ou've got to do an investigation" (R 37-1, Exh. "A" – Depo. of Timothy Williams at pp. 40:16-17, 42:21, 43:1-2, 45:25-46:1, 47:25-48:1, 49:8-9, 85:17-18), and that either "there was no investigation conducted" or the investigation "falls below law enforcement standards." (R 38-9, Exh. "9" – Expert Report of Timothy Williams at pp. 4-5.) What would constitute a proper investigation according to Williams is still unknown.

The Committee Note to the 2000 Amendments to Fed. R. Evid. 702 expressly states that if the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply taking the expert's word for it. <u>Frazier</u>, 387 F. 3d at 1248. By his own admission, Williams is relying on his "background, education, and experience" only. And by his own admission, "[p]rocedures may differ from agency to agency." (R 37-1, Exh. "A" – Depo. of Timothy Williams at pp. 35:3, 45:3.) In fact, this actually contradicts his statement above that the standards, or "answers," are the same across the country, further demonstrating the unreliable nature of his testimony. (R 37-1, Exh. "A" – Depo. of Timothy Williams at pp. 46:22-47:6.) As the District Court correctly concluded, "Williams references his 'background, education, and experience' and provides his resume for validation, but he does not explain how he reaches his conclusions based on his experience and training. Overall, his testimony is lacking in that it does not answer the question of how his experience is reliably applied in this case beyond his own opinions." (R 50 – p. 13.) The plaintiff again fails to show an abuse of discretion in that finding.

The plaintiff also states that Williams has testified 219 times and that Investigator Bultman does not point to cases where Williams' testimony has been

excluded. (Brief of Appellant at pp. 39-40.) This is also irrelevant. Investigator Bultman does not take the position that Williams is not qualified as an expert generally. He instead takes the position that in this case, Williams' opinion is based on an unreliable methodology. The plaintiff asserts that the District Court's decision to exclude Williams' testimony is "such an extreme outlier" and therefore supports a finding of an abuse of discretion. Again, this is irrelevant. This Court does not determine whether an expert's testimony is reliable as it applies to a particular case and particular facts by looking to whether an expert's testimony was reliable in a different case with different facts. The Supreme Court has explicitly stated that a lower court should reshape its reliability analyses to fit the case at hand. Kumho Tire, 526 U.S. at 150.

One specific illustration of Williams' failure to apply principles and methods reliably in this case is his contention that the investigators did not investigate to ascertain if the plaintiff's hair matched the hair of the suspect. (R 37-1, Exh. "A" – Depo. of Timothy Williams at pp. 83:17-21.) Williams testified that the plaintiff is biracial, but that the suspect's hair is not "of a biracial texture," and it is therefore his view that the officers' investigation fell below law enforcement investigative standards. (R 37-1, Exh. "A" – Depo. of Timothy Williams at pp. 84:3-21.) Williams bases his opinion on the plaintiff being biracial, which he defines as having one White parent and one Black parent. (R 37-1, Exh. "A" – Depo. of Timothy Williams

at pp. 63:1-15.) The plaintiff, however, has testified that he is Hispanic, and not biracial, since both of his parents are Hispanic. (R 25-1, Depo. of George Angel Harris at p. 20:2-19.) Williams simply does not know this case.

In a Hail Mary, the plaintiff cites to <u>Young v. New Process Steel, LP</u>, 419 F.3d 1201, 1203 (11th Cir. 2005), for the proposition that this Court can "creatively fold abuse of discretion language into *de novo* review when necessity demands a just outcome." (Brief of Appellant at p. 39 n. 6.) However, in that case, this Court found that the case "turn[ed] on a pure law issue involving the interpretation of [Fed. R. App. P. 7]." <u>Young</u>, 419 F.3d at 1203. It should go without saying, but the exclusion of Williams' testimony, albeit for the first time, does not create an issue of pure law and interpretation justifying a *de novo* review of a <u>Daubert</u> Motion. The District Court here did not find that "jurors can decide the reasonableness issue without the benefit of expert testimony" generally. (Brief of Appellant at p. 39 n. 6.) It found that jurors can decide, and should decide, the reasonableness issue without Williams' testimony. (<u>See</u> <u>generally</u> R 50.) The plaintiff has neither shown that the interpretation of Daubert principles is at issue justifying an application of a *de novo* standard, nor that the District Court misapplied those principles justifying a finding of abuse of discretion.

Williams' proposed testimony illustrates precisely the lack of specificity, conclusory statements, and *ipse dixit* that this Court warned of in <u>Cook</u>, and the District Court did not abuse its discretion by excluding it.

3. <u>Williams' Proposed Testimony Will Have a Prejudicial Effect Substantially Outweighing the Proposed Testimony's Probative Value.</u>

Williams' proposed testimony fits squarely within the type of evidence that Rule 403 aims to keep from the jury. His testimony is cumulative and will lead to a confusion of the issues because it is misleading. His proposed testimony advances inadmissible articulations of law and impermissible legal conclusions. For example, Williams insinuates that an officer must speak with the suspect in order to do a proper investigation. It is plainly incorrect to imply, especially to a jury, that an officer must always speak to a suspect before he or she has conducted a proper investigation and has probable cause to obtain an arrest warrant. (R 37-1, Exh. "A" – Depo. of Timothy Williams at pp. 40:5, 45:22-23.)

In discussing the comparison of prior photographs of Harris to the surveillance footage, Williams also states, "[i]n my analysis, the hair did not match" based on the fact that the individual's hair was a different length, but he goes on to acknowledge that a suspect could cut, grow out, or wear extensions in his hair. (R 37-1, Exh. "A" – Depo. of Timothy Williams at pp. 18-24.) This is an impermissible legal conclusion suggesting that the plaintiff is innocent, which is outside of the scope of

his expert testimony. It may also improperly suggest to a jury that because Williams believes that the plaintiff is innocent, the arrest warrant lacked probable cause and the plaintiff's rights were violated. However, an investigation may be "proper," there may be probable cause, and a suspect may still be innocent. Williams also suggests, in Finding 3 of his Expert Report, that Investigator Bultman participated in cross-ethnic identification. (R 38-9, Exh. "9" – Expert Report of Timothy Williams at p. 3.) However, Williams admitted that he is *not an expert* in cross-ethnic identification. (R 37-1, Exh. "A" – Depo. of Timothy Williams at pp. 52:17-19.) He also fails to acknowledge that Investigator Bultman did not identify Harris based on a quick glance, but rather had encountered and conversed with Harris on multiple occasions. (R 29-1, Depo. of Joseph T. Bultman at pp. 15:5-18:23.)

Illustrative of the problematic nature of both findings—that the hair did not match and that Investigator Bultman employed cross-ethnic identification—is United States v. White, 2007 U.S. Dist. LEXIS 43682 (E.D. Va. June 15, 2007), which was upheld on appeal by the Fourth Circuit Court of Appeals in United States v. White, 2009 U.S. App. LEXIS 1717 (4th Cir. Jan. 29, 2009). The court noted that (1) the comparison of surveillance photographs to more recent photographs to bolster a mistaken identity argument is something the jury can do on its own, and (2) that juries will be confused, and evidence should be inadmissible, when the expert cannot quantify how much of an impact his own conclusions should have on

the facts, and a short exposure time increases the likelihood of erroneous cross-racial identification. Id. at *9, 16-17. As the District Court succinctly explained, "Mr. Williams' opinions that the pictures do not look like Plaintiff are again unnecessary and not the type of information an expert is to provide to a jury." (R 50 – p. 14.)

The District Court did not find that Williams' testimony was inadmissible pursuant to Rule 403 because it strengthened the plaintiff's case. It found Williams' testimony was inadmissible because his "expert opinions are not supported by appropriate validation and will not assist the trier of fact in determining whether a constitutional violation has occurred in this case." (R 50 – p. 14.) The plaintiff again fails to show how this was an abuse of discretion.

## **CONCLUSION**

The District Court correctly granted summary judgment to Investigator Bultman on the basis of qualified immunity. Investigator Bultman's misidentification of the plaintiff as the crime suspect captured on surveillance video was reasonable under the facts of this case. The plaintiff failed to meet his burden of demonstrating that Investigator Bultman was not entitled to qualified immunity. Investigator Bultman's conduct is the type that qualified immunity is meant to protect.

The District Court also properly exercised its gatekeeper function under Daubert in excluding the plaintiff's expert witness. The expert failed to explain any

standard that he relied upon in reaching his opinions, failed to explain how he reached his conclusions based on his experience and training, and failed to demonstrate how his experience is reliably applied in this case. His testimony would not be helpful to a jury, and the plaintiff fails to demonstrate that the District Court abused its discretion in excluding it.

This 8 day of November, 2022.

/s/ James B. Ellington
James B. Ellington
Georgia Bar No. 243858
Emily A. Doumar
Georgia Bar No. 279018
Attorneys for Defendant/Appellee
Joseph Bultman

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, the undersigned counsel for Defendant/Appellee Joseph Bultman hereby certifies that this principal brief complies with the type-volume limitation of Rule 32(a)(7)(B)(i) in that it contains 12,076 words, excluding the parts of the brief exempted by Rule 32(f) and 11th Cir. Rule 32-4.

This Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2203 in 14-point Times New Roman font.

/s/ James B. Ellington
James B. Ellington
Georgia Bar No. 243858
Attorney for Defendant/Appellee
Joseph Bultman

# CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing Corrected Brief of Appellee Joseph Bultman using the CM/ECF system, which has effected service upon the following counsel of record pursuant to Fed. R. App. P 25 (c) (2) and 11th Cir. Rule 25-3 (a):

Craig T. Jones
Craig T. Jones, P.C.
P.O. Box 129
Suite 105
Washington, GA 30673
craigthomasjones@outlook.com

Randolph Frails
Tameka Haynes
Frails & Wilson, LLC
211 Pleasant Home Road, Suite A1
Augusta, GA 30907
randyfrails@frailswilsonlaw.com
thaynes@frailswilsonlaw.com

This is to further certify that an originally signed Brief of Appellee Joseph Bultman and four copies were also filed with the Clerk of the Eleventh Circuit United States Court of Appeals by First-Class Mail, postage prepaid, in accordance with Fed. R. App. P. 25(a)(2)(A)(ii) and 11th Cir. Rule 31-3.

This 8 day of November, 2022.

  /s/ James B. Ellington
James B. Ellington